IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

FILED
01 APR 24 PM 3:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
APR 24 2001

JAMES CLAYTON NELSON,   }
                        }
     Plaintiff,         }
                        }     CIVIL ACTION NO.
v.                      }
                        }     00-AR-0760-J
JAMES TURNER, et al.,   }
                        }
     Defendants.        }
                        }

### MEMORANDUM OPINION

Before the court are two motions by defendants, James Turner ("Turner"), Butch Hudson ("Hudson") and Todd Strickland ("Strickland"). The first is for summary judgment. The second is to strike certain exhibits offered by plaintiff, James Clayton Nelson ("Nelson"), in his response to defendants' motion for summary judgment. Nelson claims pursuant to 42 U.S.C. § 1983 that defendants violated his constitutional right to be free from cruel and unusual punishment as guaranteed by the Eight Amendment to the United States Constitution. Nelson alleges that while incarcerated in the Fayette County Jail, defendants poured "Liquid Fire", a highly acidic cleaning agent, all over his body, causing third-degree burns to his head, face, neck, arms, chest, stomach and legs. Nelson also claims that Turner intensified the effects of the acid by pouring water on the burned areas.

Defendants contend that Nelson has failed to offer any real

evidence, relying instead on mere allegations and unsworn statements. Defendants also contend that they are entitled to qualified immunity. For the reasons set out more fully below, defendants' motions will be granted.

### Pertinent, Undisputed and Disputed Facts

The controversy arises out of an incident that took place at the Fayette County Jail on May 28, 1998. Nelson claims that while he was asleep in his cell, defendants and inmate trustee, Robert Wayne Ray ("Ray"), who is not a defendant, approached his cell and poured acid all over his body, causing him to suffer horrible burns. Nelson also contends that Turner exacerbated the injuries by pouring sterile saline solution on him. As Nelson put it in his complaint:

> Defendants threw acid or allowed or instructed acid to be thrown on the Plaintiff. The Plaintiff began to scream because the acid was burning his skin. Thereafter, Defendant Turner entered the Plaintiff's cell and poured water on the Plaintiff further intensifying the effects of the acid and causing additional burning to the Plaintiff.

Plaintiff's Compl. ¶ 6. The court notes that the allegation is in the alternative. Defendants are alleged either to have thrown the acid, **or** to have instructed Ray to throw it, **or** to have **allowed** Ray to throw it. Because defendants cannot be sued under § 1983 under a theory of respondeat superior, and because mere negligence is not

actionable under § 1983, the complaint itself is deficient, but the court will assume that Nelson is claiming active, conscious participation by defendants in an acid attack on plaintiff. In defense of defendants' Rule 56 motion, Nelson offers the unsworn "affidavits" of Kenneth Ray Fluker ("Fluker"), of Gary Meadows ("Meadows"), and of Ray, an excerpt from the deposition of Fluker, an interview transcript of Meadows, and an interview transcript of Ray. Each of these "witnesses" was an inmate in the Fayette County Jail at the time Nelson suffered his injuries. Their "evidence" purports to indicate, either directly or indirectly, that each defendant in some way contributed to Nelson's injuries.

Defendants present a completely different version of the incident. In support of their Rule 56 motion, they submit, among other things, sworn affidavits, sworn declarations, deposition transcripts, medical reports, expert reports, and Fayette County Jail records, all of which constitute admissible evidence. Defendants argue that Nelson has failed, even colorably, to establish that it was they who caused his burns. Their linch pin is the fact that Nelson, himself, says he was asleep at the time of the incident so that he did not see the alleged perpetrators. Defendants contend that the reasons that neither Nelson, nor any other inmate, actually saw any one of the defendants do what Nelson claims was done to him, are: (1) that Turner was at home asleep in

his bed at the time of the incident (Stefani Kimbrough Aff. ¶ 4), and arrived at the jail only after being informed of Nelson's injuries (Jamie Bothwell Aff. ¶ 9), (Moses Aff. ¶ 10), (John Underwood Aff. ¶ 5); (2) that Strickland arrived at the jail sometime after Turner (Bothwell Aff. ¶ 9); and (3) that Hudson was never even at the jail on May 28, 1998 (Bothwell Aff. ¶ 9), (Kimbrough Aff. ¶ 7), (Moses Aff. ¶ 9), (Underwood Aff. ¶ 5).

Defendants further point to Nelson's history of self-injurious behavior (i.e., prior suicide attempts), the medical reports from the UAB Hospital suggesting that Nelson "poured alkali over his head and entire body", and the opinion of Nelson's court-appointed clinical neuropsychologist, Dr. John Goff ("Goff"). Defendants say that this undisputed evidence must lead to the conclusion that Nelson poured acid on his own body "most likely as an act of self-destruction or part of an ill-conceived escape attempt." Defendants' Brief at 3. In his 'Report of Psychological Evaluation', Goff says:

> The etiology of these burns is in some dispute. The patient [Nelson] contends that someone threw acid on him. It is my understanding through various sources that the position of the sheriff's department and others in Fayette County is that the patient poured a liquid drain cleaner on his head . . . The burns look compatible with the acid having been poured on his head rather than thrown on him.
> * * *

4

> I do think the patient has engaged in numerous self-destructive acts in the past. He denies that he committed the current act against himself but I think there is a distinct possibility that he did perform this act upon himself by virtue of the history and circumstance more than anything else.

Goff Report at 4 & 7.

As for Nelson's claims that Turner intensified the effects of the acid, Turner freely admits that after he determined that Nelson was suffering from an acid burn, he "poured sterile saline solution on [Nelson]". Defendants' Brief at 7. Defendants point out that the paramedics, under orders from a doctor to irrigate the patient, and consistent with what Turner had already done, flushed Nelson with normal saline. The first aid instructions on the 'Liquid Fire' bottle specify that the skin, after exposure to its contents, should be "immediately flush[ed] with water for 15 minutes".

The undisputed fact that perhaps looms the largest in the case is the absence of any admissible evidence of a motive for the despicable and sadistic act that Nelson charges defendants with.

## Discussion

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

5

to a judgment as a matter of law." The Supreme Court has emphasized that this language means exactly what it says: there must be a **genuine** issue of **material** fact, not merely some factual dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986). What this standard means in practice is that "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S.Ct. at 2511 (citing First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575 (1968)). The court must view the evidence, and factual inferences drawn from the evidence, in a light most favorable to the nonmoving party. See Jones v. Cannon, 174 F.3d 1271, 1281 (11th Cir. 1999).

Defendants' motion for summary judgment must be denied "if there is substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions." Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997)(quoting Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989)). If, however, as a matter of law, a jury could not return a verdict for plaintiff, defendants' motion must be granted.

It is well settled in the Eleventh Circuit that while a genuine dispute of material fact is one requiring resolution at

6

trial, a factual dispute is genuine only if the nonmovant's evidence is substantial enough to require trial. See Anderson, 477 U.S. at 249-250, 106 S. Ct. 2505 (1986); see also Robinson v. AFA Service Corp., 870 F. Supp. 1077, 1080 (N.D. Ga. 1994) (stating that "an issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is merely colorable or is not significantly probative.") (internal quotations omitted); Western Group Nurseries, Inc. v. Ergas, 167 F.3d 1354, 1359 (11th Cir. 1999) (stating that an issue of fact is "genuine," for purposes of summary judgment, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party); Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (noting that an issue of fact is genuine if record taken as whole could lead rational trier of fact to find for nonmoving party); Redwing Carriers, Inc. v. Saraland Apartments, 94 F.3d 1489, 1496 (11th Cir. 1996)(stating that issue of fact is "genuine" if record as a whole could lead reasonable trier of fact to find for nonmoving party); Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 743 (11th Cir. 1996) (specifying that for factual issues to be considered genuine they must have real basis in record); Restigouche, Inc. v. Town of Jupiter, 59 F.3d 1208, 1213 (11th Cir. 1995) (stating that to preclude summary judgment, factual dispute must be shown that is both relevant and genuine, i.e., material to an issue affecting

outcome of case and supported by evidence sufficient for reasonable jury to return verdict in favor of nonmoving party); Marine Coatings of Alabama, Inc. v. United States, 932 F.2d 1370, 1375 (11th Cir. 1991) (stating that a dispute of fact is genuine so as to preclude summary judgment, if evidence is such that reasonable jury could return verdict for nonmoving party).

It is improper for a court to weigh conflicting evidence or to make credibility determinations. However, "[i]n response to a properly supported motion for summary judgment, 'an adverse party may not rest upon the **mere allegations or denials** of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 840 (11th Cir. 2000) (emphasis supplied) (citing Fed.R.Civ.P. 56(e)). The court understands that weighing evidence and drawing inferences from the facts is the exclusive province of the jury. The court agrees with Professor Moore, however, when he explains that,

> [b]ecause the civil litigation burden of persuasion . . . rests with the claimant, the claimant must have at least **some sufficiently probative evidence** supporting each element of a claim (or cause of action) in order to prevail on the claim. If proof is absent or insufficient regarding any necessary element of a claim, the claimant cannot win at trial and trial is therefore unnecessary.

11 Moore's Federal Practice, § 56.11[1][b] (Matthew Bender 3d

ed.)(emphasis supplied).

## Analysis

Except for the deposition of Fluker, Nelson relies upon unsworn statements and third party interviews. Unsworn statements do not meet the requirements of Federal Rules of Civil Procedure 56(d) and 56(e). Furthermore, the statements of these "witnesses" were retracted or repudiated in depositions by the ostensible declarants once they had been placed under oath and subjected to cross-examination. This is also true of the Fluker deposition to the extent it was not hearsay. Meadows Depo. at 11-12 ("Nelson wanted me to say that James Turner put the acid on him and everything. I really don't know who put the acid on him, and he just wanted me to get [this lawsuit] started to where he could get out of jail . . ."); Fluker Depo. at 35-38 (recanting prior unsworn statements); Ray Depo. at 159-61. The strength of Nelson's *prima facie* case and the probative value of his "evidence" (even if admissible) is so weak as to fail the "substantiality" test.

Certain portions of the declarations offered by Nelson, even if relevant, are pure hearsay and not admissible under Rule 801(c) of the Federal Rules of Evidence.[1] Nelson is relying on unsworn

---

[1] Had this action survived summary judgment, the court would have determined at a pretrial conference whether these statements would be admissible for impeachment purposes.

9

out-of-court statements in which the declarant says that Ray admitted pouring acid on Nelson at the direction of Turner. Such statements are offered to prove the truth of the matter asserted by Ray, who is not the declarant. What might be used for the purpose of testing Ray's credibility at trial and for impeaching him is not admissible evidence for Rule 56 purposes.

While Ray said in his unsworn so-called "affidavit" on September 4, 1998, that Turner instructed him to pour acid on Nelson, Ray, himself, recanted this assertion on December 12, 2000, while testifying under oath and penalty of perjury: "James Turner didn't pour that acid on nobody, Butch [Hudson] wasn't even up there. I was the one that gave Nelson the acid." Ray Depo. at 161. This subsequent sworn testimony from Ray, coupled with defendants' other evidentiary submissions, may not prove absolutely that Nelson mutilated himself, but it does lead this court to conclude that Nelson has failed to rebut defendants' overwhelming evidence with evidence upon which a jury of reasonable people could return a verdict in his favor.[2] The idea that three persons, without any motive to do so (unless the motive suggested

---

[2] Assuming *arguendo* that Nelson had established a genuine jury question with probative and substantial evidence, the court would have denied defendants' affirmative defense of qualified immunity, except as to Nelson pouring of water on the burned areas of Nelson's body, an entirely reasonable thing to do.

10

speculatively by Nelson's innovative counsel is accepted), engaged in such horrendous conduct, is implausible if not unimaginable. A court should not send a case to a jury when all inferences that the jury might draw from the circumstances in favor of the plaintiff are "implausible." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 592-94, 106 S. Ct. 1348, 1359 (1986).

### Conclusion

Nelson has offered "evidence" that is inadmissible and/or implausible. Reduced to its essence, Nelson relies on his bare allegations and beliefs. Without supporting evidence in the form of affidavits or sworn testimony, Nelson charges defendants with pouring Liquid Fire on him. By his own admission, however, Nelson "agrees [with defendants] that his own allegations would not be enough to create an issue of fact." Plaintiff's Resp. at 3. This court agrees with this assessment, and finds that there is nothing except speculation upon which Nelson attempts to defend defendants' Rule 56 motion. This is not enough.

A separate and appropriate order in conformity with the foregoing opinion will be entered.

DONE this 24th day of April, 2001.

*/s/ William M. Acker*
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE